UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DENNIS E. MURRAY, SR. and DPM, LTD., )<br>         Plaintiffs,                           )<br>                                                    )<br>    vs.                                              )<br>                                                    )<br>CONSECO, INC. and                        )<br>CONSECO SERVICES, LLC,            )<br>         Defendants.                         )<br>_____ )<br>                                                    )<br>CONSECO, INC.                              )<br>         Counterclaim Plaintiff/          )<br>         Third-Party Plaintiff,            )<br>                                                    )<br>    vs.                                              )<br>                                                    )<br>DENNIS E. MURRAY, SR., DPM, LTD., )<br>and MARGARET MURRAY,           )<br>         Counterclaim Defendants/   )<br>         Third-Party Defendants.      )  | 1:03-cv-1701-LJM-JMS |

## **ORDER**

This matter comes before the Court on plaintiffs', Dennis E. Murray, Sr. ("Murray") and DPM Ltd. ("DPM") (collectively, "Plaintiffs"), and third-party defendant's, Margaret Murray ("Margaret Murray") (Plaintiffs and Margaret Murray collectively, the "Murray Parties"), Motion for Reconsideration of the Court's January 16, and January 23, 2009, Orders. The Court has considered the parties' arguments and, for the following reasons, **GRANTS in part and DENIES in part** the Murray Parties' Motion for Reconsideration.[1]

---

[1] The Murray Parties' Motion for Oral Argument (Dkt. No. 503) is **DENIED AS MOOT**.

## I. **BACKGROUND**

The Court presumes familiarity with the factual background contained in its earlier orders and incorporates that background information by reference herein. *See* Dkt. Nos. 401, 476, and 481.

On October 22, 2008, the Court issued its Order on the parties' Cross Motions for Summary Judgment ("Summary Judgment Order"), in which the Court concluded, among other things, that Plaintiffs' fraud claims, specifically Counts VI, VII, and VIII, of Plaintiffs' Complaint, constituted claims of recoupment and thus survived the bankruptcy injunction. Dkt. No. 401, at 26. However, the Court concluded that the Credit Agreements between the parties barred those claims. *Id.* at 26-27.

On January 16, 2009, the Court amended its Summary Judgment Order when it granted the Murray Parties' Motion for Reconsideration. Dkt. No. 476. The Court concluded that certain language from the Letter Agreement preserved Plaintiffs' right to assert their fraud claims in this action. *Id.* at 4. Nonetheless, the Court concluded that Plaintiffs' common law fraud claim, specifically Count VI, failed as a matter of law because Murray could not establish that he reasonably relied upon Conseco's alleged misrepresentations. *Id.* at 5. In addition, the Court concluded that the Murray Parties' statutory fraud claims, specifically Counts VII and VIII, violated the applicable statutes of limitation.[2] *Id.* at 6-7.

Finally, on January 23, 2009, the Court granted Conseco's Motion for Summary Judgment (Dkt. No. 382), and granted in part and denied in part Plaintiffs' Third Motion for

---

[2] Because the Court concluded that Plaintiffs' fraud claims failed, the Court did not decide the issue of whether or not Plaintiffs' could enforce the Letter Agreement. Dkt. No. 476, at 4-5.

Summary Judgment (Dkt. No. 405), concluding that although Plaintiffs' final fraud claim in Count X constituted a claim for recoupment, it failed as a matter of law because Murray could not establish that he reasonably relied upon the alleged misrepresentations and that it violated the applicable statute of limitations. Dkt. No. 481, at 5-7.

The Murray Parties' move the Court to reconsider several issues in the Court's prior Orders.

## II. **STANDARD**

Rule 54(b) provides that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). The parties have asked the Court to reconsider a pre-judgment interlocutory decision. Such decisions may be reconsidered at any time. *See Matter of 949 Erie St., Racine, Wis.*, 824 F.2d 538, 541 (7th Cir. 1987); *Cameo Convalescent Ctr., Inc. v. Perry*, 800 F.2d 108, 110 (7th Cir. 1986). Under the "law of the case" doctrine, the Court may refuse to consider that which has already been decided, *see Cameo Convalescent Ctr.*, 800 F.2d at 110, however, the Court has "the discretion to make a different determination of any matters that have not been taken to judgment or determined on appeal." *Id.* A motion to reconsider must be based on the need "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.* 90 F.3d 1264, 1269 (7th Cir. 1996). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard,

misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

### III. DISCUSSION

The critical issue in this Motion to Reconsider is the Court's treatment to date of the Plaintiffs' fraud claims in Counts VI, VII, VIII, and X. Specifically, Plaintiffs argue that the Court erred when it concluded (1) that Plaintiffs' fraud claims in Counts VII, VIII, and X were time barred; and (2) that Plaintiffs' fraud claims in Counts VI and X failed because Murray could not demonstrate that he reasonably relied on Defendants' alleged misrepresentations.

The Court concludes that it erred in its application of *Chauffeurs, Teamsters, Warehouseman & Helpers Local Union No. 135 v. Jefferson Trucking Co., Inc.*, 473 F. Supp. 1255, 1258 (S.D. Ind. 1979). In its prior Orders, the Court concluded that Plaintiffs' fraud claims qualified as claims of recoupment and that therefore they survived the bankruptcy injunction. However, the Court concluded that Counts VII, VIII, and X were barred by the applicable statute of limitations even though, as stated by the court in *Chauffers*, statutes of limitation generally do not bar a claim for recoupment if the claim to which the claim for recoupment responds is timely brought. *Chauffeurs*, 473 F. Supp. at 1258. Accordingly, the Court's decision that the applicable statutes of limitation barred Plaintiffs' fraud claims was "manifest error." *CBI Indus., Inc.*, 90 F.3d at 1269. Therefore, as to this issue, the Murray Parties Motion for Reconsideration is **GRANTED**.

The parties' briefing on this motion has also brought to the Court's attention that it

decision that Plaintiffs' fraud claims constitute claims of recoupment was incorrect.  As the Court noted in its Summary Judgment Order, "[c]laims of recoupment occur where the same contract or transaction gives rise to both the claims asserted in the original complaint and the defendants' counterclaims.  Dkt. No. 401, at 26 (citing *N. Trust Co. v. Peters*, 69 F.3d 123, 135 (7th Cir. 1995)).  Under that standard, the critical question is whether the fraud alleged in Plaintiffs' claims stems from the "same contract or transaction that gives rise" to Conseco's contract claims.  *Id.*  Plaintiffs essentially allege that Conseco's misrepresentations induced them into participating in the D & O program and that, therefore, Plaintiffs' fraud claims and Conseco's contract claims arose from the same "transaction."

*Peters* is very instructive on the issue of whether a claim to recoup damages that stem from alleged fraud constitutes a claim of recoupment in an breach of contract action.  In *Peters*, the Welsh Development Agency ("WDA") hired Frank Peters "Peters" to build a computer diskette manufacturing plant in Wales and to offer his expertise in the operation of that building.  *Peters*, 69 F.3d at 126.  A start-up venture, Parrot Corporation, Ltd. ("Parrot"), would own and operate the plant.  *Id.*  WDA pledged £1,000,000 and stated it would secure additional financing through outside investors.  *Id.*  Peters and his wife, Marta Chaikovska, invested £250,000.  *Id.* at 127.  They borrowed this money from Northern Trust Company ("Northern Trust"), and executed a promissory note in its favor.  *Id.*  WDA eventually solicited an additional £1,500,000 from individual investors.  In addition, Parrot also applied for a loan of approximately £2,500,000 from the European Coal and Steel Community ("ECSC").  According to an investment memorandum, all funds raised to support this project would be made through a clearinghouse and would be

5

available to Parrot for working capital and purchases of equipment.

Based on his prior experience with the Northern Trust, Peters suggested to WDA that it approach Northern Trust to obtain a loan guarantee. *Id.* WDA negotiated a loan guarantee from Northern Trust in the form of letters of credit on behalf of Parrot. *Id.* Ultimately, the investors, including Peters, agreed to enter into an Investment Agreement upon receipt of a satisfactory comfort letter from Northern Trust. Northern Trust submitted the comfort letter to WDA on December 23, 1983, but that letter did not reference a 100% cash collateral requirement that Northern Trust would impose as a prerequisite to its issuance of the letters of credit. Unaware of the cash collateral requirement, all of the investors entered into the Investment Agreement. Afterward, the investors placed their funds with Northern Trust. *Id.* On January 12, 1984, Northern Trust delivered a three-page letter to Peters and WDA that, unlike the comfort letter, detailed Northern Trust's 100% cash collateral requirement. The cash collateral requirement prevented the Parrot venture from using approximately £2,000,000 of the funds it had raised from the investors and the ECSC.

In addition to omitting the cash collateral requirement from the comfort letter, Northern Trust forged Peters' name to an extract from a meeting of Parrot's Board of Directors, in which the Board authorized Peters to proceed with the letters of credit and ECSC loan transactions. The signed extract was required before the loans could be processed. Eventually, the Parrot venture began to experience cash problems and the investors launched an investigation, which ultimately led to the firing of Peters by Parrot.

Northern Trust subsequently asserted a breach of contract claim against Peters and Chaikovska based upon a promissory note they executed in favor of Northern Trust.

Peters asserted several counterclaims for breach of contract, fraud, negligent misrepresentation, infliction of emotional distress, deceptive trade practices, defamation, forgery, and recoupment. *Id.* at 130. The district court dismissed Peters' claim for recoupment, in which he alleged that he was entitled to recoup from Northern Trust all damages Northern Trust claimed in its original complaint as a result of Northern Trust's liability on the claims asserted in his amended counterclaims.

The Seventh Circuit affirmed that portion of the district judge's opinion. According to the *Peters* court:

> Recoupment is a defense applicable in situations where the same transaction or contract gives rise to the claims asserted in an original complaint and a subsequent counterclaim. It involves the right of the defendant to have the plaintiff's monetary claim reduced by virtue of a claim by the defendant against the plaintiff arising out of the same contract. Northern Trust's original complaint was based upon the promissory note executed by Peters and Chaikovska. Peters' amended counterclaim alleges liability predicated upon Northern Trust's actions exclusive of the promissory note. Therefore, the claim of recoupment . . . is not viable.

*Id.* at 135. Thus, even though the promissory note was executed as a part of the building project "scheme," the Seventh Circuit nonetheless concluded that Peters' counterclaims did not arise from the same transaction as Northern Trust's contract claim. *Id.*

Here, the Court concludes that Plaintiffs' fraud claims allege "liability predicated upon [Defendants'] actions exclusive of the [Loan Documents]." *Id.* Similar to Northern Trust in *Peters*, Defendants assert claims predicated on promissory notes and loan guarantees. Plaintiffs' argument that Defendants' allegedly fraudulent misrepresentations induced Murray to execute the Loan Documents is no different that Peters' assertion that Northern Trust's omission of the cash-collateral requirement induced him to participate as an investor in the building project. *Id.* Furthermore, Plaintiffs' argument, and the Court's

7

conclusion in its Summary Judgment Order, that Plaintiffs' fraud claims arise from the same "transaction" for recoupment purposes because the Guarantees were a part of the D&O scheme is without merit. Peters and Chaikovska executed the promissory note as a part of the building project scheme in *Peters*, yet the Seventh Circuit explicitly held that Peters' counterclaims did not arise from the same transaction for recoupment purposes. *Id.*

Accordingly, on its own motion, the Court reconsiders its decision in the Summary Judgment Order and concludes that it committed manifest error in its analysis related to whether or not Plaintiffs' fraud claims constitute claims of recoupment. Under *Peters*, Plaintiffs' fraud claims do not constituted claims of recoupment. Plaintiffs' fraud claims were therefore not preserved by the parties' stipulation during the bankruptcy proceedings and, as a result, the bankruptcy injunction bars Plaintiffs from asserting those claims in the present action. 11 U.S.C. § 524. Defendants' Motions for Summary Judgment (Dkt. Nos. 192 and 382) as to Counts VI, VII, VIII, and X of Plaintiffs Amended Complaint are **GRANTED**.

Moreover, even if the Court concluded otherwise, Plaintiffs' fraud claims fail on their merits. In its earlier orders, the Court concluded that Counts VI and X failed because Murray could not establish reasonable reliance. Plaintiffs disputes this finding, but do not offer any additional evidence or applicable legal authority to lead to a different outcome. Plaintiffs essentially reassert arguments already presented, contrary to the purposes of a motion for reconsideration pursuant to Rule 54. *See Oto*, 224 F.3d at 606 (quoting *Sedrak*, 987 F. Supp. at 1069) ("A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize

controlling precedent.'"). Therefore, as to the Court's conclusion that Counts VI and X fail, Plaintiffs' Motion for Reconsideration is **DENIED**.

To the extent Plaintiffs assert a claim for breach of fiduciary duty separate and apart from their fraud claim in Count X, that claim likewise fails as a matter of law. The elements of a claim for breach of fiduciary duty are (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendants' breach. *See F.T.C. v. Think Achievement Corp*, Cause No. 2:98-CV-12-TS, 2007 WL 3286802, at *4 (N.D. Ind., Nov. 5, 2007) (citing *W & W Equip. Co. v. Mink*, 568 N.E. 2d 564, 570-76 (Ind. Ct. App. 1991)). Here, Plaintiffs cannot establish that Defendants' alleged misrepresentations proximately caused Plaintiffs' alleged damages because Plaintiffs had knowledge of the falsity of Defendants' statements prior to signing the 2000 Credit Agreements and Bank Notes.

Count VIII, alleging federal securities fraud, fails for similar reasons. "A claim of fraud fails if there is no proof that the plaintiff relied to his detriment on the defendant's misrepresentations or misleading omissions." *Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568, 569 (7th Cir. 2009) (citing *Dura Pharma., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)). As the Court has already concluded, Murray could not have reasonably relied upon Conseco's alleged misrepresentations when he executed the 2000 Credit Agreements and Bank Notes.

As to Count VII that asserts an Indiana securities fraud claim, Plaintiffs cite *Arnold v. Dirrim*, 398 N.E. 2d 426, 435 (Ind. Ct. App. 1979), and argue that "reliance is not required to establish a claim for fraud under the Indiana Uniform Securities Act." Dkt. No. 502(2), at 22-23; Dkt. No. 516, at 14. Conseco responds by noting the *Arnold* court's

assessment that under the Indiana Uniform Securities Act, the "buyer need only show that he did not know the untruth or omission." *Arnold*, 398 N.E. 2d at 435.  Conseco argues that, because Plaintiffs cannot demonstrate that they were unaware of Conseco's alleged untruths or omissions, Count VII fails as a matter of law.

The Court agrees with Conseco.  Under *Arnold*, Murray's claim under the Indiana Uniform Securities Act cannot survive if he had knowledge of the falsity of Conseco's statements or its omissions.  The Court has already concluded that there is no genuine issue of material fact that Murray had knowledge of the falsity of the alleged misrepresentations when he executed the 2000 Credit Agreements and Bank Notes.  Therefore, Count VII in Plaintiffs' complaint fails as a matter of law.  *Arnold*, 398 N.E. 2d at 435.

## IV.  CONCLUSION

For the foregoing reasons, plaintiffs', Dennis E. Murray, Sr. and DPM, Ltd., and third-party defendant's, Margaret Murray, Motion for Reconsideration is **GRANTED in part and DENIED in part**. However, defendants', Conseco, Inc. and Conseco Services, LLC, Motions for Summary Judgment as to Counts VI, VII, VIII, and X of Plaintiffs' Second Amended Complaint remain **GRANTED**, but for the reasons stated herein; the Court's October 22, 2008, January 16, 2009, and January 23, 2009, Orders (Dkt. Nos. 401, 476, and 481, respectively), are hereby **AMENDED** as set forth in this Order.

IT IS SO ORDERED this 4th day of May, 2009.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

Carol A. Nemeth
PRICE WAICUKAUSKI & RILEY
cnemeth@price-law.com

Henry J. Price
PRICE WAICUKAUSKI & RILEY
hprice@price-law.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI & RILEY
rwaicukauski@price-law.com

Justin Andrew Barker
KIRKLAND & ELLIS LLP - Chicago
jbarker@kirkland.com

Erin L. Connell
RILEY BENNETT & EGLOFF
econnell@rbelaw.com

S. Maja Fabula
KIRKLAND & ELLIS LLP - Chicago
mfabula@kirkland.com

Stephen C. Hackney
KIRKLAND & ELLIS LLP - Chicago
shackney@kirkland.com

Ryan L. Leitch
RILEY BENNETT & EGLOFF LLP
rleitch@rbelaw.com

Scott A. McMillin
KIRKLAND & ELLIS LLP - Chicago
smcmillin@kirkland.com

Matthew Nirider
KIRKLAND & ELLIS LLP - Chicago
mnirider@kirkland.com

Reed S. Oslan, P.C.
KIRKLAND & ELLIS LLP - Chicago
roslan@kirkland.com