NOT INTENDED FOR PUBLICATION IN PRINT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DENNIS E. MURRAY, SR., and DPM, LTD., )<br>    Plaintiffs, )<br>  )<br>  vs. )<br>  )<br>CONSECO, INC. and CONSECO SERVICES, )<br>LLC, )<br>    Defendants. | 1:03-cv-1701-LJM-JMS |

**ORDER GRANTING**
**MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER**

This matter is before the court on Plaintiffs' Motion to Quash Subpoena and for Protective Order (the "Motion"). [Dkt. 534]. The motion is fully briefed. The Court now **GRANTS** the motion for the reasons set forth below.

In the Motion the Murray parties seek to quash a subpoena issued by Conseco to one of their trial counsel, Carol Nemeth.[1] The subpoena commands Ms. Nemeth to submit to a deposition and to produce documents regarding advice she gave to the Murrays back in 2004 concerning the need to file a document evidencing Margaret Murray's withdrawal as a general partner of DPM, LLP with the Ohio Secretary of State's Office.

In earlier ruling, the Court addressed the relevance to this case of Margaret Murray's alleged

---

[1] In referencing Carol Nemeth throughout this order, the Court refers to Carol Nemeth, the individual and counsel of record. It declines to employ the almost non-sensical definition of Ms. Nemeth that Conseco provided in its Subpoena Duces Tecum: "'Carol Nemeth' shall mean Carol A. Nemeth, Esq., in her individual capacity, as an attorney for the Murray Parties, and as an employee or associate of Price Waicukauski. This term shall include any agents, consultants, employees, attorneys, representatives and other person(s) who are, or were, acting under her control, at her direction, or on her behalf." [Dkt. 534-1 at 2.]

withdrawal from DPM:

>Conseco seeks a judgment to hold Murray and Margaret Murray personally liable for DPM's obligations. DPM is an Ohio limited partnership. Pl.'s Ex. A, ¶ 81. Under Ohio law, a general partner of an Ohio limited partnership is personally liable for the debts and obligations of the limited partnership. Ohio Rev. Code Ann. § 1782.24. Plaintiffs do not dispute that, if DPM is liable, Murray is personally liable for DPM's obligations as general partner. However, the Murray Parties argue that Margaret Murray is not liable for the D&O Loans in a representative capacity on behalf of DPM because she is not now a general partner of DPM, and was not a general partner of DPM at the time the parties entered the underlying agreements. Rather, the Murray Parties argue that Margaret Murray was a limited partner of DPM and that, therefore, she is not liable for DPM's obligations. Pls.' Br. at 21 (citing Ohio Revised Code § 1782.19)).
>
>In support of their assertion that Margaret Murray was not a general partner of DPM, the Murray Parties point to several pieces of evidence. First, Murray filed a certificate of amendment of limited partnership with the Ohio Secretary of State on February 5, 2004. Defs.' Ex. 39. In that document, Murray states that he was the only general partner of DPM from April 1, 1997, forward after Margaret Murray withdrew as a general partner. Id. Additionally, the Murray Parties submitted a document purporting to be Margaret Murray's written withdrawal as a general partner dated April1, 1997. Pls.' Ex. A-29. The Murray Parties contend that Margaret Murray circulated the withdrawal to all the partners and that therefore her withdrawal was effective under Ohio Revised Code § 1782.l32. Pls.' Br. at 22. Also, Murray claims that he instructed Conseco's attorney, David Herzog ("Herzog"), when the parties refinanced the Credit Agreements and Bank Notes in 2000, that Murray was the sole general partner of DPM; that Margaret Murray was not a general partner; and that she would not sign those documents. Pls.' Ex. A, ¶ 89. The 2000 Credit Agreements contained Margaret Murray's name and a space for her signature, but the name was scratched out. Id., ¶ 89;Defs.' Exs. 10-12. Morever, the Murray Parties submitted a letter Murray received from his counsel in which Murray's counsel instructed Murray that he did not need to file any documents to make Margaret Murray's withdrawal effective. Pls.' Ex. A-32. The Murray Parties claim that Margaret Murray withdrew as a general partner before the 2000 Credit Agreements were entered into and that, although she did not file with the Secretary of State prior to entering into the agreements, Conseco had actual notice of her withdrawal. As a result, the Murray Parties argue that Conseco cannot rely on the Secretary of State filings for DPM prior to February 2004.
>
>Conseco's designated evidence paints a somewhat different picture as to Margaret Murray's status with DPM. First, Conseco states that throughout the entirety of its dealings with Murray and DPM, Margaret Murray was listed as a general partner of DPM with the Secretary of State. She executed the agreement in 1998 and 1999, and Mr. Herzog has no recollection of any agreement that Margaret Murray not be liable under the 2000 Credit Agreements. Further, Conseco points out that Murray did not file the withdrawal with the Secretary of State until after the present litigation was filed.

[Dkt. 401 at 12-14.]

The Court ultimately determined that a fact issue exists concerning Margaret Murray's status as a general partner of DPM, and denied summary judgment for both parties. [*Id.* at 14.] The legal significance of the 2004 filing with the Ohio Secretary of State is yet to be resolved.

The Murrays oppose the supboena to Ms. Nemeth on many grounds. They assert it is untimely, seeks irrelevant information, seeks information protected by the attorney-client and work-product privileges, is burdensome, and constitutes harrassment. Conseco counters vigorously on the privilege claims, by arguing the Murrays waived any privilege when Dennis Murray testified on August 14, 2008 that he submitted the 2004 filing with the Ohio Secretary of State because Ms. Nemeth advised him to. Where Conseco falls short, however, is in response to the Murrays' argument that the subpoena is untimely.

Liability discovery in this case closed on August 15, 2008. It is true that the term "liability" discovery may have lost some of its typical meaning in this case due to the protracted litigation over the many and ever-increasing fraudulent transfer claims raised by Conseco. Discovery as to those claims might better be termed "collection discovery." However, there can be no confusion that Margaret Murray's status as a general or limited partner relates to liability in the most traditional sense. Thus discovery on that issue closed over six months before Conseco served its subpoena on Ms. Nemeth, and over six months after Conseco was aware that DPM and Murray were claiming the substance of Ms. Nemeth's advice to them about the filing was privileged. [Dkt. 541-3, 541-6.]

Where, as here, a party seeks to conduct discovery after the discovery cut-off provided in a case management order, Federal Rule of Civil Procedure 16(b)(4) requires the party to first establish "good cause" for extending the deadline. Because a case management order is "a vehicle designed to streamline the flow of litigation through our crowded dockets," the deadlines that it

establishes should not be taken "lightly." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). Given the concern about delay, it is not surprising that when a party claims that it has good cause to extend a case management deadline, courts focus on that party's diligence. *Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005). Nonetheless, "Rule 16 can and does consider prejudice as part of its 'good cause' analysis." *Kortum v. Raffles Holdings, Ltd.*, 2002 U.S. Dist. LEXIS 21252, at *17 (N.D. Ill. 2002).

Conseco's brief devotes scant effort to justifying the untimeliness of its discovery. The best that it offers in that regard is this:

> Nor should the Murray Parties be permitted to invoke the discovery cut-off to avoid this deposition. For the last several months, Conseco has been asking the Murray Parties to provide a complete, and accurate, privilege log regarding documents withheld, in particular as to Conseco's request for documents regarding asset transfers. They have refused to do so, instead serving a cursory privilege log with [sic] devoid of any specificity but generally acknowledging that Price Waicukauski has had communications with the Murray Parties regarding this litigation. The Murray Parties' inappropriate response to privilege issues only confirms that Conseco's subpoena to Carol Nemeth is necessary in order to learn what role Price Waicukauski has had in Margaret Murray's alleged resignation and in the position the Murray Parties have propounded.

[Dkt. 451 at 14.]

The Court is not persuaded. First, Conseco has not demonstrated the necessity of waiting on a privilege log before proceeding with this discovery. Any advice that Ms. Nemeth gave concerning the filing had nothing to do with asset transfers—and, in any event, the evidence submitted by Conseco does not support a contention that the advice was in writing that would even appear on a log [Dkt. 541-6 at 2 ("**Q** And why did you prepare this document in 2004? **A** Because I had a call from my lawyer.")]. Second, even if a privilege log were a necessary precondition to noticing this deposition, Conseco has offered no argument about why it did not request the Court's assistance in obtaining a privilege log. If the privilege log provided truly were as deficient as

Conseco claims, the Court could have quickly resolved the issue months ago through a telephone status conference with counsel.  Choosing to sit on its hands, as Conseco did, for six months after the advice-of-counsel issue was made known does not demonstrate reasonable diligence.

The Court also finds that permitting the untimely discovery would potentially prejudice the Murrays.  By seeking to depose Ms. Nemeth, Conseco also seeks to turn her into a witness in this case.  If she is a witness, Ms. Nemeth cannot serve as trial counsel.  Ind. R. Prof. Cond. 3.7(a).  Such a result would be decidedly unfair to the Murrays, who have relied on Ms. Nemeth as counsel in this case for almost six years.  Further, with trial just under three months away, the Court would be faced with the unpalatable prospect of a potential motion to continue the trial setting.

The Murrays' Motion to Quash and for Protective Order is hereby **GRANTED.**  The subpoena is **QUASHED**. A Protective Order is hereby issued prohibiting Conseco from seeking further discovery from trial counsel as to their advice to the Murrays concerning the 2004 filing with the Ohio Secretary of State's Office.

SO ORDERED.

06/22/2009

Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

Copies to:

Justin Andrew Barker
KIRKLAND & ELLIS LLP - Chicago
jbarker@kirkland.com

S. Maja Fabula
KIRKLAND & ELLIS LLP - Chicago
mfabula@kirkland.com

Ashley John Burden
KIRKLAND & ELLIS LLP
aburden@kirkland.com

Stephen C. Hackney
KIRKLAND & ELLIS LLP - Chicago
shackney@kirkland.com

Erin L. Connell
RILEY BENNETT & EGLOFF
econnell@rbelaw.com

Ryan L. Leitch
RILEY BENNETT & EGLOFF LLP
rleitch@rbelaw.com

Scott A. McMillin
KIRKLAND & ELLIS LLP - Chicago
smcmillin@kirkland.com

Carol A. Nemeth
PRICE WAICUKAUSKI & RILEY
cnemeth@price-law.com

Matthew Nirider
KIRKLAND & ELLIS LLP - Chicago
mnirider@kirkland.com

Reed S. Oslan, P.C.
KIRKLAND & ELLIS LLP - Chicago
roslan@kirkland.com

Henry J. Price
PRICE WAICUKAUSKI & RILEY
hprice@price-law.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI & RILEY
rwaicukauski@price-law.com