UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

DENNIS E. MURRAY, SR., and          )
DPM, LTD.,                          )
        Plaintiffs,              )
                                   )
    vs.                          )          1:03-cv-1701-LJM-JMS
                                   )
CONSECO, INC., and CONSECO          )
SERVICES, LLC,                      )
        Defendants.              )
_____    )
                                   )
CONSECO, INC.,                      )
      Counterclaim Plaintiff/         )
      Third-Party Plaintiff,          )
                                   )
    vs.                          )
                                   )
DENNIS E. MURRAY, SR., DPM, LTD.,   )
and MARGARET MURRAY,                )
      Counterclaim Defendants/        )
      Third-Party Defendant.          )

## <u>ORDER</u>

This matter comes before the Court on several different motions.  First, the Court considers defendant's, Conseco, Inc. ("Conseco"), Motion for Additional Sanctions and to Lift Discovery Stay as to Murray & Murray, Co. L.P.A. ("Motion for Sanctions").  Second, the Court considers plaintiffs', Dennis E. Murray, Sr. ("Murray") and DPM, Ltd. ("DPM") (collectively, "Plaintiffs"), Motion for Leave to Amend to Add Counts XI and XII to Second Amended Complaint ("Plaintiffs' Motion for Leave").  Finally, the Court considers the remaining motions currently pending before the Court.  The Court rules as follows.

## I. MOTION FOR SANCTIONS

### A. FINDINGS OF FACT

On November 5, 2008, Magistrate Judge Stinson lifted the discovery stay as to third-party plaintiff, Margaret Murray ("Mrs. Murray").  Dkt. No. 424.  In addition, she ordered Murray to "provide full and complete documentation regarding all of his retirement accounts within 14 days."  Her order was explicit:

> what [Murray] does not have in his possession he is ordered to obtain.  The Court will not require Conseco to go through the gathering process it was forced to do with the tax returns and bank accounts.  From this order forward, it is Murray's burden to obtain the copies of all documents ordered to be produced by the Court, and to immediately produce them to Conseco in their entirety.

Dkt. No. 424 at 11-12.  Likewise, Judge Stinson ordered Plaintiffs and Mrs. Murray (collectively, the "Murray Parties") "to conduct a diligent inquiry and provide a comprehensive, master list of all bank and brokerage accounts held by them since 1996 within 14 days.  For any accounts for which all statements have not yet been produced, the Murray [P]arties are ordered to produce them, and what they do not have in their possession they are ordered to obtain."  *Id.*

On November 19, 2008, the Murray Parties filed their "Notice of Compliance with Court's November 5, 2008[,] Order," in which the Murray Parties informed the Court that they provided Conseco's counsel a comprehensive, master list of "all their bank and brokerage accounts held since 1996."  Dkt. No. 430.  In addition, they "report[ed] that full and complete documentation of their retirement accounts, brokerage accounts and bank accounts have been provided to Defendant's counsel."  *Id.*

However, on December 30, 2008, Conseco's counsel sent a letter (the "December

2

2008 Letter") to the Murrays' counsel that outlined what Conseco considered deficiencies in the Murray Parties' November 19, 2008, production. Dkt. No. 505(7). According to Conseco's counsel, some of the account statements produced by the Murrays did not contain check images; some were illegible; and some did not cover the entire time period subject to Conseco's discovery requests. *Id.* Conseco requested that the Murrays supplement their responses and provide written confirmation from each financial institution that the specific account at issue was not open during the applicable period. *Id.* Conseco also outlined specific deficiencies in Mrs. Murray's responses to Conseco's first requests for production and first interrogatories, including missing documents relating to Mrs. Murray's wills and trusts, tax returns for a particular trust, and the individual identity of her financial advisors. *Id.* Finally, Conseco asserted that Mrs. Murray had failed to produce an updated privilege log. *Id.*

On January 5, 2008, Judge Stinson granted Conseco's Motion to Amend Case Management Plan (the "January 2008 Order"), because discovery into the Murrays' finances was incomplete. Dkt. No. 467. Judge Stinson recommended that this Court vacate and continue the February 2, 2009, trial date to May 18, 2009, to enable the parties to complete discovery. In addition, Judge Stinson ordered Mrs. Murray to "produce all documents and information responsive to Conseco's First Interrogatories and First and Second Requests for Production of Documents, curing all deficiencies outlined by Conseco, by January 16, 2009." Dkt. No. 467 at 3. Judge Stinson also ordered Murray to "produce all responsive documents and information regarding his retirement accounts by January 16, 2009." *Id.* On January 7, 2009, the Court vacated and continued the February 2, 2009, trial date to May 18, 2009.

3

In response to the January 5, 2008 Order, the Murrays, among other things, sent eleven letters to third-party financial institutions requesting documents that the Court ordered the Murrays to produce on or before January 16, 2009.  Dkt. No. 485(3).  The Murrays sent all but three of these letters on January 16, 2009, and none of the letters delivered any sense of urgency.  *Id.*

On January 23, 2009, in anticipation of their conference call with Judge Stinson, the Murrays filed their Memorandum on Compliance with Discovery Entries, in which they attempted to "apprise the Court of the efforts they have made to comply with this Court's Entries of November 5, 2008[,] . . . and January 5, 2009[.]"  Dkt. No. 482.  The chart attached to the Murrays' Memorandum indicated that the Murrays had not completed their financial document production.  Dkt. 482(2).

On February, 2, 2009, Conseco filed its Motion for Sanctions.  Conseco asserted that discovery into the Murrays' finances was still incomplete as of February 2, 2009.  Conseco alleged that the Murrays had failed to produce the following financial discovery:

Margaret Murray's Financial Discovery

- October 2006-November 2006 account statements for Fifth Third Bank account #28354804.

- February 2002, November 2002, February 2003, November 2003, January 2004- March 2004, May 2004, August 2004, November 2004, August 2005-September 2005 statements for Morgan Stanley account #524 048009.

Other Financial Discovery

- January 2005- September 2006 account statements for DPM's Citizens Bank account #58886.

- January 2005-September 2006 account statements for DPM's Citizens Bank account #58894.

4

- March 2002, April 2002-May 2002, July 2002-August 2002, October 2002- November 2002, February 2003, April 2003-May 2003, January 2004-February 2004, April 2004-May 2004, August 2004, October 2004-December 2004, January 2005, April 2005, August 2005, October 2005 statements for Mr. Murray's Morgan Stanley account #524 048008.

- February 2002, April 2002-May 2002, August 2002, November 2002, February 2003, April 2003-May 2003, October 2003-November 2003, January 2004- February 2004, April 2004-June 2004, August 2004, and November 2004 statements for DPM's Morgan Stanley account #524 058176.

Def.'s Br. at 5.

On February 19, 2009, Conseco sent another letter (the "February 19, 2009 Letter") to the Murrays' counsel that outlined, in Conseco's view, the remaining deficiencies in the Murrays' production. Dkt. No. 505(3). Among other things, Conseco identified six KeyBanc accounts that were not listed in the Murrays' November 19th Comprehensive List of Accounts and a previously undisclosed Morgan Stanley account that had received a transfer of $75,000.00. *Id.* According to Conseco, that account was affiliated with the Dennis Murray Sr. Irrevocable Trust. *Id.* In addition, Conseco attached a chart to its letter that "identifie[d] the outstanding account statements and additional issues specific to certain accounts." *Id.*

On February 20, 2009, the Murrays responded to Conseco's Motion for Sanctions and asserted that discovery was, at long last, complete. In support, the Murrays submitted yet another chart to summarize their efforts to cure the deficiencies raised in the parties' conference call with Judge Stinson. Dkt. No. 498(10). The chart indicated, among other things, that the Murrays made several disclosures after the January 16, 2009, deadline. *Id.*

5

On March 18, 2009, the Murrays filed their Surreply to the Motion for Sanctions and attached additional charts in response to Conseco's February 19, 2009 Letter.  Dkt. No. 511(3)-(4).   The charts conclusively establish that the Murray's produced several documents after January 16, 2009.  Several of those documents were received by the Murrays in response to the letters they sent out on January 16, 2009.

On May 28, 2009, the Court heard oral argument on Conseco's Motion for Sanctions.  In large part, the parties merely presented the same facts that had been described in and attached as exhibits to the parties' briefs.  However, Conseco submitted a realtime rough draft of Mrs. Murray's video deposition in an effort to demonstrate that the Murray Parties' counsel, Price, Waicukauski & Riley ("PWR"), failed to adequately guide its clients through the discovery process.  Sanctions Hearing Ex. ("Hrg. Ex.") 12.  The deposition shows that Mrs. Murray did not reference her email accounts or her computer's hard drive when she gathered materials to respond to Conseco's discovery requests. *Id.* at 12-13.

### B.  CONCLUSIONS OF LAW

Based upon the foregoing facts, the Court concludes that the Murrays violated the Court's November 5, 2008, and January 5, 2009, discovery orders.  The November 5, 2008, Order required the Murrays to"provide full and complete documentation regarding all of [Murray's] retirement accounts," in addition to a "master list of all bank and brokerage accounts held by them since 1996," all within 14 days.  Dkt. No. 424.  Moreover, the Court ordered the Murrays to personally obtain and produce any accounts for which all statements had not yet been produced.  *Id.*  The January 5, 2009, Order required the

6

Murrays to cure the deficiencies in their discovery production outlined in the December 30, 2008 Letter by January 16, 2009.  Dkt. No. 467.  Both orders were clear: what the Murrays did not have, they were ordered to personally obtain.  Dkt. Nos. 424, 467.  The Murrays could not simply rely on third parties to comply with the Court's orders.  *Id.*

Nevertheless, contrary to the Murrays' representation in their November 19, 2008, Notice of Compliance with the November 5, 2008, Order that "full and complete documentation of their retirement accounts, brokerage accounts and bank accounts ha[d] been provided to Defendant's counsel,"  the Murrays failed to provide "full and complete" documentation within the time period allowed by the Court.  The Murrays' own charts conclusively establish that the Murrays failed to comply.  Dkt. Nos. 482(2); 498(10); 511(3)-(4).  Although the Court agrees that portions of the charts support a finding that the Murrays complied with some aspects of the Court's orders, the charts clearly establish that the Murrays produced responsive discovery materials after the Court-imposed deadlines of November 19, 2008, and January 16, 2009.  *Id.*  In fact, the Murrays produced several documents after the January 23, 2009, conference with Judge Stinson.  *Id.*

The Murrays' basic defense to Conseco's Motion for Sanctions is that their failure to completely comply with the Court's orders is excused by their good faith efforts to respond in a short period of time.

First, as to Murray, even assuming he made good faith efforts to comply–which, as discussed in further detail below, is not a safe assumption–such efforts are simply not a defense to his noncompliance at this stage in the litigation.  As the Court noted in its February 6, 2009, Order on Judge Stinson's R&R, the record is replete with Murray's efforts to deny access to his financial information.  He initially opposed any discovery at all into his

financing, forcing Conseco to file a motion to compel.  Dkt. No. 199.  The Court overruled

his objects.  He then produced incomplete information, forcing Conseco to file yet another

motion to compel.  Dkt. No. 246.  The Court found Murray's responses deficient and

ordered him to produce full, unredacted copies of his tax returns, account statements, and

other responsive documents in his possession.  When Murray claimed that he did not have

in his possession or control many of the documents sought, Conseco served a subpoena

to his accountants, Skoda Minotti.  Murray filed a motion for protective order in an attempt

to block Conseco from obtaining the documents that he was unable to provide.  Dkt. No.

296.  The Court denied the motion.  Although Murray had contacted his accounts at Skoda

Minotti regarding some of the documents Conseco sought and learned that they were

readily available and could be provided to Murray, he continued to claim to Conseco that

he did not have copies of the documents used to prepare his tax returns.  It was from these

documents that Conseco learned the terms of the Margaret Murray Trust No. 2.  In its

order, the Court sanctioned Murray for his deliberate disregard of the Court discovery

orders.  Dkt. No. 487.

Although Murray's discovery misconduct with respect to the Margaret Murray Trust

No. 2 is not technically at issue here–which is to say that the Court considers Conseco's

Motion for Sanctions on its own merits, and not on Murray's actions prior to the Court's

November 5, 2008, Order–the Court need not consider the pending Motion in a vacuum.

In its February 6, 2009 Order, the Court explained this its sanction of Murray for his

discovery misconduct was necessary "not only to penalize Murray for his misconduct, but

also to deter Murray, 'who might be tempted to such conduct in the absence of a

deterrent.'" Dkt. No. 487 (quoting *National Hockey League v. Metro Hockey Club, Inc.* 427

U.S. 639, 643 (1976)); *see* Dkt. No. 424 ("While Murray's frustration with Conseco is evident, as a licenced attorney he cannot resort to self-help by making his own decisions about what is relevant, what constitutes a fraudulent transfer, and what convoluted definitions he may apply to Conseco's interrogatories."). Yet Murray, an experienced litigator and member of the bar, has failed to provide full and complete production in response to the Court's orders, causing not only unnecessary expense to Conseco, but also causing the Court to move the trial date in this matter multiple times.  Therefore, even if Murray convinced the Court he made a good faith effort to comply, those efforts would not excuse his noncompliance.

The discussion above is somewhat merely an academic exercise because the evidence refutes Murray's, and to a lesser extent Mrs. Murray's, claim that the Murrays made a good faith effort to comply with the Court's discovery orders.  First, as to Mrs. Murray, the Court acknowledges that the Court lifted the discovery stay to her finances in the November 5, Order, allowing fourteen days to comply with Conseco's prior discovery requests.  As to the November 5, Order, the Court concludes that Mrs. Murray performed a good faith review of her financial documents and produced those documents, as best she could, by November 19, 2008.  Although her efforts ultimately produced less than ideal results,  the Court cannot find any evidence in the record that Mrs. Murray intentionally attempted to frustrate Conseco's efforts by providing incomplete production into her finances.

However, the Court cannot accept the Murrays' representation that they made a good faith effort to comply with the Court's January 5, 2009, Order.  Judge Stinson explicitly ordered the Murrays to cure all deficiencies in their production on or before January 16,

9

2009.  Dkt. No. 467.  Yet, the Murrays waited until January 16, 2009, to send letters to third-party financial institution, requesting documents relevant to the Murrays' financial discovery.  Dkt. No. 485(3).  Rather than explaining the urgent need for a prompt response, the letters simply requested the documentation without any sense of urgency.  *Id.*  For example, the letters did not even include the most basic fact that the a court had ordered the Murrays to produce the information requested by the letters on January 16, 2009.  Although the Murrays claim they made a good faith effort to comply, their actions speak louder than their words.  Simply put, the evidence does not support a finding that the Murrays made a good faith effort to comply with the Court's January 5, 2009, Order.

As to PWR, Conseco alleges that, as the Murrays' counsel, PWR is responsible for the Murrays' discovery misconduct and should also be sanctioned.  In addition, Conseco points to payments made to PWR out of the Margaret Murray Trust No. 2, the trust at issue in the Court's earlier sanctions order, in which the Court concluded that the Margaret Murray Trust No. 2 held fraudulently transferred funds.  According to account statements from the trust and one of the Murrays' checking accounts, in October, November, and December 2008, the Murrays withdrew certain amounts of money from the Margaret Murray Trust No. 2 and wrote checks to PWR for the same or near the same amount that the Murrays had withdrawn from the trust.  Dkt. No. 485(4)-(7).  Accordingly, it appears to the Court that the Murrays paid over $480,000.00 to PWR with funds from the Margaret Murray Trust No. 2.  Dkt. No. 485(4)-(7).

First, the Court concludes that the Murrays' failure to adequately respond to Conseco's discovery requests and the Court's discovery orders does not warrant sanctions against PWR.  The Court has found no evidence that suggests PWR intentionally advised

10

the Murrays to disregard the Court's discovery orders.  Rather, the Court concludes that PWR made a good faith effort to ensure their clients satisfied the Court's orders.  Likewise, the Court concludes that PWR's alleged receipt of funds from the Margaret Murray Trust No. 2 does not warrant sanctions at this time.  Conseco failed in its briefs and during the hearing to demonstrate that the PWR knew the funds it received as payment from the Murrays in October, November, and December came from the Margaret Murray Trust No. 2.

Finally, because the Court concludes that the Murrays' have violated the Court's discovery orders,  the Court must decide the appropriate sanction under Rule 37(b) of the Federal Rules of Civil Procedure ("Rule 37(b)").  FED. R. CIV. P. 37(b).  Under Rule 37(b)(2), if a party disobeys a discovery order, the Court can issue an order: (1) providing that "the matters regarding which the order was made or any other designated facts" are taken as established; (2) refusing to allow the disobedient party to support or oppose designated claims or defenses; (3) dismiss the action or render a judgment by default against the disobedient party; and (4) treat the disobedient party's failure to obey the court's orders as a contempt of court.  *Id.*  Moreover, under Rule 37(b)(2)(C),

> "[i]nstead of or in addition to the orders above, the [C]ourt must order the disobedient party, his attorney, or both, to pay the reasonable expenses, including attorneys' fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(b)(2)(C).

The decision to sanction and the choice of an appropriate sanction fall squarely within the discretion of the district court "[b]ecause the district court is in the best position to determine if a party has complied with its discovery orders[.]" *Melendez v. Ill. Bell*

11

*Telephone Co.*, 79 F.3d 661, 670-71 (7th Cir. 1996).  "Where a court determines that sanctions are necessary, 'the sanction selected must be one that a reasonable jurist, apprised of all of the circumstances, would have chosen as proportionate to the infraction.'" *Id.* at *4 (citing *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998)).

In its Motion for Sanctions, Conseco requested that the Court hold the Murrays in contempt, order the Murrays to complete discovery by a date certain, and impose a $1,000.00 per day penalty after that date for every day the Murrays remain noncompliant. The Court concludes that a contempt sanction is unnecessary at this time.  First, based upon the representations made by the parties during the hearing, the Court is not convinced that the Murrays' discovery production contains deficiencies that the Murrays are able to cure.  For example, Morgan Stanley has instructed the Murrays that several of the account statements that the Murrays requested were destroyed on September 11, 2001, during the attacks on the World Trade Center.  In any event, for reasons discussed in more detail below, the Court concludes that the resolution of the liability phase of this case should occur without further delay.  Therefore, the Court concludes that discovery pursuant to Conseco's fraudulent transfer claims is complete, with opportunity to re-raise the issues related to said discovery at a later date.  As a result, Conseco's suggested contempt sanction is unnecessary.

"Instead of" the other sanction orders available under Rule 37(b)(2)(A), the Court **ORDERS** the Murrays to personally reimburse Conseco for its reasonable attorney's fees related to Conseco's Motion for Sanctions.  Fed. R. Civ. P. 37(b)(2)(C).  The Court **ORDERS** Conseco to submit documentation in support of their claim for reasonable

12

attorney's fees within ten days of this Order.  Because the Court concludes that only Murray, and not Mrs. Murray, violated the Court's November 5, 2009 Order, the fee petition should itemize the fees and expenses incurred as a result of (1) Murray's failure to comply with the November 5, 2008, Order; and (2) both Murray and Mrs. Murray's failure to comply with the Court's January 5, 2009, Order.

The second part of Conseco's Motion for Sanctions, in which Conseco requests that the Court lift the discovery stay as to Murray's law firm, Murray & Murray, Co. L.P.A., is discussed below.

## II.  PLAINTIFFS' MOTION FOR LEAVE

Plaintiffs request leave to add Counts XI and XII to their Second Amended Complaint.  According to Plaintiffs, Count XI merely asserts Count VI of their original counterclaims in the consolidated case, 1:05-cv-1580 -LJM-VSS (the "Consolidated Case"), for breach of fiduciary duty, plus some "newly found evidence."  Count XII asserts a claim for relief under the Indiana Crime Victim's Relief Act.

The Court concludes that, at this stage in the litigation, Plaintiffs should not be allowed to Amend their Second Amended Complaint.  This action has been pending for nearly six years without final resolution of the Murray Parties liability under the D&O Loans. Plaintiffs have had ample opportunity to amend their Second Amended Complaint.  In fact, the Court allowed Plaintiffs to amend on two separate occasions.  Dkt. Nos. 271, 359. Ultimately, as discussed further below, the Court concludes that the resolution of the underlying liability claims should occur without further delay.

Plaintiffs argue that their claim for breach of fiduciary duty survives regardless of

13

whether the Court grants their Motion to Amend because they asserted Count XI as a counterclaim in the Consolidated Case.  Because that counterclaim was never subjected to a motion and decision on the merits, Plaintiffs argue the claim is still pending.  The Court disagrees.  After Plaintiffs became aware the Court intended to consolidate the current action and the Consolidated Case, but before the Court ordered the Clerk to consolidate the two actions, the Court ordered Plaintiffs to file their Second Amended Complaint.  Plaintiffs complied and, unsurprisingly, the Second Amended Complaint looks strikingly similar to the counterclaims Plaintiffs asserted in the Consolidated Action, except for Plaintiffs failure to assert Count VI of their counterclaims.

On two different occasions, the Court allowed the Murray Parties to add additional claims to their Second Amended Complaint; however, the Murray Parties never added this claim for breach of fiduciary duty.  Likewise, the Murray Parties never asserted this alleged breach of fiduciary duty in defense against Conseco's contract claims in their summary judgment briefs, as they did with their other fraud claims.  It appears to the Court that either: (1) the Murray Parties decided not to proceed with Count VI of their original counterclaims after consolidation of the two cases; or (2) the Murray Parties forgot about the claim.  Either way, the Court will not allow the Murray Parties to amend, yet again, their Second Amended Complaint at this late stage of the case.  Accordingly, because the Court concludes that the liability phase of this case must reach final resolution without further delay, the Murray Parties' Motion for Leave to Amend to Add Counts XI and XII to Second Amended Complaint is **DENIED**.

## III.  THE PARTIES' REMAINING MOTIONS

The following motions are currently pending before the Court:

(1)    Defendants' Sealed Motion for Summary Judgment on Certain Fraudulent Transfers (Dkt. No. 417)

(2)    Defendants' Sealed Motion to Strike Deposition Errata of Dennis Murray, Margaret Murray and James Sacher (Dkt. No. 426)

(3)    The Murray Parties' Motion for Oral Argument (Dkt. No. 441)

(4)    Conseco's Motion to Lift Discovery Stay (Dkt. No. 485)

(5)    Conseco's Sealed Motion for Leave to File Additional Complaint (Dkt. No. 513)

The parties, and the Court, have spent considerable time and effort addressing discovery issues related to Conseco's fraudulent transfer claims, which relate to Conseco's ability to collect on its judgment.  Accordingly, the Court concludes that the parties should obtain final resolution of the Murray Parties' liability under the D&O loans, specifically Mrs. Murray's potential liability as an alleged general partner of DPM, before expending any more time and resources on Conseco's ability to collect on its judgment.  The Court considers Conseco's Motion for Summary Judgment on Certain Fraudulent Transfers fully briefed and ripe for ruling; however, said motion is **DENIED WITHOUT PREJUDICE**. Similarly, Conseco's Motion to Lift Discovery Stay, and Motion for Leave to File Additional Complaint, are **DENIED WITHOUT PREJUDICE**.  Conseco's Motion for Oral Argument is **DENIED AS MOOT**.

Finally, the Court concludes that Murray's, Mrs. Murray's, and Mr. Sacher's errata sheets made material and contradictory changes to their deposition testimony.  Therefore, Conseco's Sealed Motion to Strike Deposition Errata of Dennis Murray, Margaret Murray

15

and James Sacher is **GRANTED**.  *See Thorn v. Sunstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) ("[A] change of substance which actually contradicts the [deposition] transcript is impermissible.").

## IV.  **CONCLUSION**

For the foregoing reasons, defendant's, Conseco, Inc., Motion for Additional Sanctions and Lift Discovery Stay as to Murray & Murray, Co. L.P.A. is **GRANTED in part, DENIED in part, and DENIED WITHOUT PREJUDICE in part**.  Plaintiffs', Dennis E. Murray and DPM, Ltd., Motion for Leave to Amend Complaint to Add Counts XI and XII is **DENIED**.  Defendants', Conseco and Conseco Services, Motion for Summary Judgment on Certain Fraudulent Transfers and Motion for Leave to File Additional Complaint are **DENIED WITHOUT PREJUDICE**.  Plaintiff's, Dennis E. Murray,  and third-party plaintiff's, Margaret Murray, Motion for Oral Argument is **DENIED AS MOOT**.  Defendants' Motion to Strike Deposition Errata of Dennis Murray, Margaret Murray, and James Sacher is **GRANTED**.

IT IS SO ORDERED this 25th day of June, 2009.


_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

Justin Andrew Barker
KIRKLAND & ELLIS LLP - Chicago
jbarker@kirkland.com

Ashley John Burden
KIRKLAND & ELLIS LLP
aburden@kirkland.com

Erin L. Connell
RILEY BENNETT & EGLOFF
econnell@rbelaw.com

S. Maja Fabula
KIRKLAND & ELLIS LLP - Chicago
mfabula@kirkland.com

Stephen C. Hackney
KIRKLAND & ELLIS LLP - Chicago
shackney@kirkland.com

Ryan L. Leitch
RILEY BENNETT & EGLOFF LLP
rleitch@rbelaw.com

Scott A. McMillin
KIRKLAND & ELLIS LLP - Chicago
smcmillin@kirkland.com

Carol A. Nemeth
PRICE WAICUKAUSKI & RILEY
cnemeth@price-law.com

Matthew  Nirider
KIRKLAND & ELLIS LLP - Chicago
mnirider@kirkland.com

Reed S. Oslan, P.C.
KIRKLAND & ELLIS LLP - Chicago
roslan@kirkland.com

Henry J. Price
PRICE WAICUKAUSKI & RILEY
hprice@price-law.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI & RILEY
rwaicukauski@price-law.com